UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KENNETH A. SMITH                                                                       PLAINTIFF

v.                                                  CIVIL ACTION NO. 3:09-CV-41-S

LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT          DEFENDANT

## MEMORANDUM OPINION

This is a job discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964. Plaintiff Kenneth Smith ("Smith"), who is an African-American male, claims that he was fired as part of a pattern of racial discrimination on the part of defendant Louisville Jefferson County Metro Government ("Louisville Metro"), Smith's former employer. Louisville Metro has moved for summary judgment (DN 22). Smith has responded (DN 25), and Louisville Metro has replied (DN 26). For the reasons set forth herein, Louisville Metro's motion will be **GRANTED**.

## BACKGROUND

Smith was employed as a Heavy Equipment Operator with Louisville Metro's Department of Facilities Management. He was fired in January 2007 after allegedly failing to comply with a supervisor's instructions. According to Smith's disciplinary report, a supervisor instructed Smith to load a salt truck with salt and to salt all bridges and overpasses on an assigned route, apparently in anticipation of or in response to inclement weather. *See* DN 22-5. Smith refused to do so. *Id.* He was then instructed to load a tank of brine solution into a brine truck. *Id.* Smith refused, saying that he did not know how to load the equipment, even though he had received training on loading procedures several weeks before. *Id.* On January 12, 2007,

Louisville Metro terminated Smith, citing as grounds violation of Louisville Metro's policies on insubordination and the responsibilities of public employees.

Smith argues that his actions were proper because (1) the truck he was instructed to load with salt had a defective tailgate and would likely have spilled the salt before it could be spread; (2) at least two employees were needed to load a brine tank, and a co-worker Smith asked for help refused to assist him. Smith also states that the brine truck was also later taken out of service for repair. DN 25 at 2–3. Thus, Smith claims, he was not insubordinate, but rather was unable to perform his job duties properly and safely.

After his termination, Smith filed a grievance with Louisville Metro. He was represented by his union at a meeting between a Louisville Metro Human Resources officer, but ultimately was not reinstated. Smith filed a discrimination complaint with the Equal Employment Opportunity Commission and received a right-to-sue letter in October 2008. In January 2009, he brought this action against Louisville Metro, alleging that Louisville Metro had violated Title VII. Specifically, Smith claims that his discharge was the result of "a policy and practice" on Louisville Metro's part to terminate Smith and other African-American male employees for "slight infractions" of workplace rules while failing to take action against white male employees who committed similar infractions. Compl. ¶ 7. Louisville Metro now moves for summary judgment.

**ANALYSIS**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact arises when there is "sufficient evidence on

which the jury could reasonably find for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The evidence presented must be construed in the light most favorable to the non-moving party. *Blakeman v. Mead Containers*, 779 F.2d 1146, 1150 (6th Cir. 1985).

A plaintiff who seeks relief under Title VII must, as a threshold matter, set forth a prima facie case of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). This can be done through direct or circumstantial evidence. *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). Where only circumstantial evidence is presented, the plaintiff must satisfy the factors set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) as clarified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). The plaintiff must show that he (1) was a member of a protected class; (2) suffered an adverse action; (3) was qualified for his position; and (4) was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802).

If the plaintiff establishes a prima facie case, the burden of production then shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998)). If the employer meets this burden, the burden of production then shifts back to the plaintiff to show that the employer's nondiscriminatory explanation is a mere pretext for intentional discrimination. *Id.*

**I. Smith's Prima Facie Case**

When a plaintiff attempts to raise a claim of disparate treatment by showing that a similarly situated non-protected employee received favorable treatment, the plaintiff must

produce evidence (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir. 1992) (citations omitted).

Smith cites two incidents he claim show that employees who were not members of a protected class received favorable treatment from Louisville Metro. First, he alleges that James Gordon, a white male, was cited for insubordination after removing chairs from a landfill against the orders of two supervisors. Smith alleges that Gordon was "written up," but was not terminated. Second, Smith alleges that David Ross, also a white male, was cited for insubordination after refusing to comply with a direct order of his supervisor. Smith alleges that Ross, like Gordon, was merely given a "write up," and was not discharged.

In order to compare a discrimination plaintiff's treatment to that of non-protected employees, the plaintiff must show that the "comparables" are similarly situated in all relevant aspects. *See Ercegovich*, 154 at 352. In the context of a discharge for disciplinary reasons, such aspects include whether the employees had the same supervisor, were subject to the same standards, or engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583. However, the plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be 'similarly-situated.'" *Ercegovich*, 154 F.3d at 352.

Smith has not established that Ross and Gordon were similarly situated in all relevant respects. Although Smith, Ross, and Gordon were all technically cited for "insubordination," the conduct underlying the offenses differed substantially in each situation. Gordon received a four-

day unpaid suspension in October 2003 for removing two chairs from a landfill without his supervisor's permission. It appears that it was initially recommended that Gordon be terminated, *see* DN 26-2 (Louisville-Jefferson County Metro Government Memorandum), but Louisville Metro decided to only suspend Gordon after meeting with Gordon and a union representative. Louisville Metro concluded that Gordon was "definitely insubordinate" because he did not follow his supervisor's instructions, but decided not to terminate Gordon because Gordon only intended to take the chairs to the breakroom at the landfill instead of to his home, and because Gordon was truthful in his account of the incident. *Id.*

Ross received a written reprimand in May 2006 for failing to comply with his supervisor's instructions. Louisville Metro repeatedly characterizes Ross' infraction as a simple refusal to put on a safety vest, but Ross' disciplinary form indicates that Ross' actions may have gone beyond that. The disciplinary report states that Ross was

> . . . instructed to put on a safety vest, in preparation for going to work. Your job classification is Equipment Operator III. This includes everything from cutting grass, picking up paper, to operating any and all equipment. You are expected to perform any and all jobs that need to be done, from a laborer position up to and including operating equipment.
>
> I have addressed this topic in an open meeting with the entire staff. At the time I told everyone that equipment operators did not, [sic] just operate equipment, that they were expected to get out of the equipment and help with any task as needed.
>
> DN 22-2 (Ross Employee Consultation/Disciplinary Action Form).

Smith has failed to show that Gordon and Ross were disciplined for the same that Smith was. Gordon's conduct – removing chairs from a landfill against his supervisor's orders – was clearly quite different from Smith's failure to complete the tasks he was told to complete. Ross' conduct appears to have been somewhat closer in nature to Smith's, given that the disciplinary

report indicates that Ross may have refused or failed to perform his assigned tasks. However, it is unclear from the record what exactly occurred with respect to Ross' insubordination, and Smith has not offered sufficient evidence to show that Ross engaged in the "same conduct without . . . differentiating or mitigating circumstances," *see Mitchell*, *supra*, that Smith did. The only evidence Smith provides with respect to Ross' behavior is an affidavit from Larry Selmon, who was Ross' supervisor at the time of his disciplinary citation. Selmon states, "While David Ross was under my supervision he refused to follow my directions and my direct orders. He was written up but was not discharged. Mr. Ross was white." Selmon Aff. (DN 25-8) ¶ 6. This vague assertion does not show that Ross engaged in similar conduct such that he could be considered a "comparable" to Smith in the disparate treatment analysis.

Further, Gordon and Ross both worked under different a different supervisor than Smith. This is a relevant consideration here because all three employees were disciplined due to insubordination – specifically, the failure to follow a supervisor's instructions. The assessment of the seriousness of an insubordination offense (and the proper punishment for it) will naturally vary from supervisor to supervisor, rendering it impossible to compare the disciplinary measures taken against different employees. Gordon and Ross therefore cannot be considered "comparables" for the purpose of a disparate treatment analysis.

Because Smith has not established that he was treated differently from similarly situated non-protected co-workers, the court concludes that he has failed to set forth a prima facie case of discrimination. Summary judgment for Louisville Metro is therefore appropriate on Smith's Title VII claim.

**II. Louisville Metro's Non-Discriminatory Reason for Adverse Employment Action**

Even if Smith had set forth a prima facie case of discrimination, Louisville Metro is still entitled to summary judgment because it has articulated a legitimate, non-discriminatory reason for the adverse employment action and because Smith has not shown that this reason was a mere pretext.

Louisville Metro's non-discriminatory explanation for Smith's firing is simple: Smith failed to perform the tasks his supervisor told him to perform. Although Smith may have disagreed with the propriety of being told to complete these tasks, he does not dispute that he failed to carry them out. Thus, Louisville Metro has established that it had a legitimate reason for discharging Smith.

Smith has not shown that this reason was pretextual. He first alleges that there was no snowstorm on the day of the incident and thus no emergency situation that required an immediate response. However, this fact, even taken as true, does not refute Louisville Metro's claim that Smith was insubordinate. Smith also asserts that he did not refuse to comply with his supervisor's instructions, but rather was physically unable to complete his assigned tasks because the salt truck's back gate was broken and because his co-worker refused to help him load the brine truck. Again, this does not refute Louisville Metro's contention that Smith was fired because he did not follow his supervisor's instructions. Whatever his reasons for doing so, Smith did not do what he was told to do. The court concludes that Smith has not established that the reason articulated for his firing was pretextual, and summary judgment is appropriate on this ground as well.

A separate order will issue in accordance with this opinion.